AFFIRM; Opinion Filed January 28, 2013



In The

# Court of Appeals
## Fifth District of Texas at Dallas

No. 05-11-00926-CR
No. 05-11-00927-CR
No. 05-11-00928-CR
No. 05-11-00929-CR
No. 05-11-00930-CR

## JOE BYRON PENNINGTON II, Appellant

### V.

## THE STATE OF TEXAS, Appellee

**On Appeal from the 380th Judicial District Court**
**Collin County, Texas**
**Trial Court Cause Nos. 380-81134-09, 380-81135-09,**
**380-81136-09, 380-81137-09, and 380-81138-09**

## MEMORANDUM OPINION

Before Justices Moseley, Francis, and Lang
Opinion by Justice Francis

Joe Byron Pennington II was charged with theft of a 2002 Lexus automobile and a Suzuki motorcycle engine, possession with the intent to deliver four grams or more but less than 200 grams of methamphetamine, possession of 400 grams or more of gamma hydroxybutyric acid (GHB), and possession of four grams or more but less than 400 grams of psilocybin mushrooms. A jury convicted him on all charges and assessed punishment at two years in state jail for the Lexus theft; one year in state jail for the engine theft; twenty years in prison for the

methamphetamine case; twenty years in prison for the GHB case; and two years in prison for the psilocybin mushrooms.

In two issues, appellant complains he was denied effective assistance of counsel because his counsel erroneously informed him before trial, and told the jury panel during voir dire, that he was not eligible for probation on the GHB case when, in fact, he was. We affirm.

Appellant does not challenge the sufficiency of the evidence to support his convictions; consequently, we will only briefly recite the facts. After receiving anonymous tips that appellant was selling drugs out of his apartment, Plano police set up surveillance and stopped a man on a traffic violation immediately after he visited appellant. The man, Jason Powell, possessed methamphetamine that he said he had just purchased from appellant. After obtaining a search warrant, the police entered appellant's apartment, which appellant had outfitted with surveillance cameras, including one in the peephole. Appellant was cooperative and admitted he had drugs and weapons in the apartment and directed the police to them. The police recovered 4.22 grams of methamphetamine, 5.68 grams of psilocybin mushrooms, several bottles of GHB totaling 414.11 grams, drug paraphernalia, a 9-millimeter semiautomatic assault pistol with 26 rounds of ammunition and a bag to catch the spent casings, a .308 semiautomatic rifle with a magazine capable of holding thirty rounds, a .25-caliber handgun with live rounds, counterfeit money and driver's licenses, various vehicle registrations belonging to other people, and stacks of IDs, some with appellant's picture and different names. In addition, the police also recovered a stolen Lexus automobile and a motorcycle with a stolen Suzuki engine.

During voir dire, the prosecutor discussed punishment issues at length with the venire and, in particular, the punishment ranges for drug offenses. The prosecutor explained that the weight of the drugs determines the punishment range but incorrectly told the venire that a weight

2

of more than 400 grams (as in the GHB case) carried a punishment range of fifteen years to 99 years or life and a fine up to $250,000. In fact, the minimum sentence for possession of 400 grams of GHB is ten years to 99 years or life and up to a $100,000 fine. *See* TEX. PEN. CODE 481.115(f) (West 2010). Possession with intent to deliver 400 grams or more of GHB, rather than simple possession, carries the punishment range explained by the prosecutor. *See* TEX. PEN. CODE 481.112 (f) (West 2010).

The prosecutor went on to explain that a defendant is eligible for probation if he has never been convicted of a felony and only if the sentence is ten years or less. He added: "So for more than 400 grams at the minimum of 15 years, and obviously that's above 10, so probation won't be an option there. But everything else, you know, if you can – if it's possible to give 10 years, then you can give 10 years of probation."

After explaining the punishment ranges, the prosecutor said the jury would determine whether the defendant received probation and the decision had to be unanimous. He then told venire members they needed to be able to consider the full range of punishment, from probation to 99 years or life in prison, without having heard any of the facts. In response to questions, the prosecutor said each case would have its own punishment and the sentences would run concurrently. If jurors gave prison time on one charge and probation on another, the prosecutor explained the defendant would serve his time in prison and serve his probation on release. The prosecutor then asked each juror individually if he or she could consider the full range of punishment and, except for five members of the venire, each said he or she could without any qualification. The five members expressed concern with the fairness of the high end of the punishment range, not probation. None of the five was seated on the jury.

3

After the State finished its voir dire, defense counsel repeated the prosecutor's mistake and told the venire that if appellant "is convicted of over 400 grams of something, it's automatic minimum 15 years in prison. Pretty serious. But if it's under 400 grams, there's a possibility of probation. Much bigger difference." After discussing adulterants and dilutants and field-testing of drugs, defense counsel noted that he had "covered punishment. Everybody can consider probation under these circumstances? Anybody have a problem with probation under these circumstances?" No juror voiced any concern with probation.

After hearing the evidence, the jury convicted appellant on all five charges. By the time the punishment hearing began, defense counsel knew he had been mistaken on the punishment range in the GHB case and that appellant was probation eligible. Only one witness testified at punishment, appellant's mother Linda Pennington. Defense counsel acknowledged his error when questioning her about appellant's eligibility for probation. Pennington also testified her son suffers a terminal heart/lung illness, pulmonary hypertension, which has caused heart damage. She said appellant takes thirty-five pills a day and is on oxygen. Pennington explained that there is no cure for the disease and said appellant had been undergoing experimental medication. She did not believe appellant would receive appropriate treatment in prison and pleaded with jurors to give him probation.

The punishment charge for the GHB case contained the correct punishment range and allowed the jury to recommend probation. The jury, however, declined to recommend probation on any of the cases.

Appellant then filed a motion for new trial complaining he received ineffective assistance of counsel. Among other things, he complained trial counsel failed to advise him of "the applicable range of punishment." Appellant was the sole witness at the hearing on the motion.

4

He testified he had a rare terminal illness, pulmonary hypertension, and had been on investigational medication at the University of Texas Southwestern Medical Center before his trial. He said he told trial counsel about his condition and expressed that he did not want to go to jail. Appellant said trial counsel told him that he was not eligible for probation because he was "looking at 15 years to life" and he needed to "plead not guilty to everything for any hope of having any kind of no jail time." He said that, on his attorney's advice, he pleaded not guilty to all charges. On the morning of sentencing, after the jury had convicted him, appellant said he learned for the first time that he was in fact eligible for probation. Appellant said if he had known before the trial started that he was eligible for probation, he would have "manned up to what I did" and pleaded guilty, instead of not guilty, and would have asked for probation based on his health condition. By pleading not guilty, he said, he felt like he wasted the judge and jury's time and "insult[ed] their intelligence by sitting here with all this evidence against me looking like a ridiculous fool pleading not guilty."

Appellant acknowledged that he was never offered probation by the State in return for a guilty plea. He also acknowledged the jury was told about his medical condition numerous times and still gave him twenty years in prison on the GHB case. After hearing the evidence, the trial court denied the motion. This appeal ensued.

In two issues, appellant contends he was denied effective assistance of counsel when his trial counsel misinformed him before trial and the jury panel at voir dire that the minimum sentence on the GHB case was fifteen years and he was therefore not eligible for probation on the GHB case. Appellant contends the misinformation denied him a meaningful opportunity to strategize and prepare for trial and to voir dire the jury panel on the minimum punishment range.

5

Appellant made his claim of ineffective assistance of counsel in a motion for new trial. We therefore must determine whether the trial court erred in denying the motion. A trial court abuses its discretion if no reasonable view of the record could support the trial court's ruling. *Riley v. State*, 378 S.W.3d 453, 457 (Tex. Crim. App. 2012). This deferential view requires us to view the evidence in the light most favorable to the trial court's ruling. *Id.* We must not substitute our judgment for that of the trial court and must uphold the trial court's ruling if it is within the zone of reasonable disagreement. *Id.*

We examine ineffective assistance of counsel claims by the standard set out in *Strickland v. Washington*, 466 U.S. 668 (1984) and adopted in *Hernandez v. State*, 726 S.W.2d 53, 56–57 (Tex. Crim. App. 1986). To obtain reversal on grounds of ineffective assistance of counsel, appellant must show that (1) counsel's representation fell below an objective standard of reasonableness and (2) the deficient performance prejudiced him; that is, but for the deficiency, there is a reasonable probability that the result of the proceeding would have been different. *See Andrews v. State*, 159 S.W.3d 98, 101–02 (Tex. Crim. App. 2005).

We commonly assume a strategic motive if any can be imagined and find counsel's performance deficient only if the conduct was so outrageous that no competent attorney would have engaged in it. *Id.* at 101. Further, the court of criminal appeals has made clear that trial counsel should ordinarily be accorded an opportunity to explain his actions before we label his conduct deficient. *Rylander v. State*, 101 S.W.3d 107, 110–11 (Tex. Crim. App. 2003). But, when no reasonable trial strategy could justify trial counsel's conduct, counsel's performance falls below an objective standard of reasonableness as a matter of law, regardless of whether the record adequately reflects trial counsel's subjective reasons for acting as he did. *Andrews*, 159 S.W.3d at 102.

6

The State concedes that appellant has proven the first prong of *Strickland*, acknowledging that defense counsel's mistaken belief regarding the punishment range in the GHB case was erroneous and not based on any reasonable trial strategy. We agree and therefore limit our review to the second prong of *Strickland* and consider whether appellant has shown prejudice. When making this review, we do not require that the appellant show that there would have been a different result if counsel's performance had not been deficient. *Id.* at 102. The defendant must show only that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. *Id.* A reasonable probability is a probability sufficient to undermine confidence in the outcome. *Id.*

We begin with appellant's complaint regarding voir dire. Appellant argues counsel's error denied him the opportunity to voir dire the jury panel "concerning the range of punishment on all of the cases, including the minimum punishment and the possibility of community supervision." He complains that any "generalized commitment to consider the 'range of punishment' or 'probation' by the jury panel in all of the cases amounted to a mere empty promise" since the panel was told the sentences would run concurrently and even if appellant received probation in one case and prison in another, he would nevertheless be sent to prison. He argues he was denied the intelligent exercise of his peremptory challenges and all of the cases should therefore be reversed. At the least, he argues, we should reverse the judgment in the GHB case. We cannot agree.

First, appellant does not complain and the record does not show that the venire members were incorrectly informed about the punishment ranges on the other four cases. To the contrary, the venire members agreed they could consider probation on those cases and were told that each case would have its own punishment. Thus, appellant's punishment in each of those cases was

7

decided by jurors who indicated they could consider probation on that individual case and who were aware that they were making a punishment decision in each case separate from any decision in the GHB case. We therefore cannot conclude that there is a reasonable probability that the outcome in these cases would have been different if the jury had not been incorrectly informed at voir dire that the GHB case carried a minimum fifteen-year sentence.

As for the GHB case, the venire received extensive information about probation and the range of punishments available in drug offenses. Although each venire member was asked if he or she could consider the full range of punishment (from probation to life in prison), the only concerns expressed dealt with fairness of the high end of the punishment range. Not one venire member expressed any difficulty in considering probation and, importantly, none expressed any difficulty in considering probation if appellant was convicted of possessing between 200 and 400 grams of GHB or of the seemingly more serious offense of distributing methamphetamine. Based on the record before us, we conclude it is reasonable to believe that if asked, the venire members would likely have indicated no problems with considering probation for possession of more than 400 grams of GHB.

In addition, the evidence in this case showed that appellant was an admitted drug user and dealer who had surveillance cameras in his apartment that allowed him to watch the comings and goings inside and outside his apartment. The police found large quantities of various drugs and three weapons, two of which were loaded, and a bag designed to catch spent casings. Additionally, they found a stolen automobile and stolen motorcycle engine as well as various counterfeit instruments, such as money, driver's licenses, and vehicle registrations, that indicate other illegal behavior. From what the police uncovered, the jury could have concluded that appellant was no low-level, small-time drug user or drug dealer. And, from the punishments

8

assessed, it is likely they concluded his crimes warranted significant prison sentences. Not only did the jury not recommend probation on cases where the punishment assessed was under ten years, it did not assess probation-eligible punishments in the GHB and methamphetamine cases. Given the record in this case, we cannot conclude there is a reasonable probability that but for counsel's incorrect statements during voir dire, his punishment in the GHB case would have been different.

Appellant next complains that counsel's failure to know the correct range of punishment denied him the opportunity to meaningful trial preparation and trial strategy. He asserts that based on trial counsel's misinformation, he pleaded not guilty. He further asserts he would have pleaded guilty with the "hope to curry favor from the jury by immediately accepting responsibility for all of the cases had he known he could have been eligible for community supervision before trial began."

Within this issue, appellant relies on his testimony at the motion for new trial hearing. Initially, we note that appellant's trial counsel did not testify at the hearing and has not had the opportunity to provide evidence regarding his pre-trial conversations with appellant. Given that the court of criminal appeals has repeatedly stated its preference for hearing from counsel before considering an ineffective assistance of counsel claim, we question whether we should decide this issue on an incomplete record. Nonetheless, our review of the record does not reasonably lend itself to a conclusion that appellant would have received less punishments if he had "manned up" and entered an open plea of guilty to the jury. We have previously outlined the evidence against appellant, and there is nothing to suggest that the jury would not have had the benefit of this same evidence if appellant had pleaded guilty. Additionally, appellant's mother begged the jury to give her son probation after explaining that he was terminally ill. Not only did

9

the jury not give appellant probation in any of the cases, it did not impose sentences that even allowed for probation in the two most serious drug cases, twenty-year sentences in each case. Given the record before us, we cannot conclude that there is a reasonable probability that, but for counsel's errors, the jury would have imposed lesser punishment had appellant entered an open plea of guilty. We overrule both issues.

We affirm the trial court's judgments.

_____
MOLLY FRANCIS
JUSTICE

Do Not Publish
TEX. R. APP. P. 47
110926F.U05



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE BYRON PENNINGTON II,
Appellant

No. 05-11-00926-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 380th Judicial District
Court of Collin County, Texas (Trial Court
No. 380-81134-09).
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered January 28, 2013.

_____
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE BYRON PENNINGTON II,
Appellant

No. 05-11-00927-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 380th Judicial District
Court of Collin County, Texas (Trial Court
No. 380-81135-09).
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered January 28, 2013.

_____
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE BYRON PENNINGTON II,
Appellant

No. 05-11-00928-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 380th Judicial District
Court of Collin County, Texas (Trial Court
No. 380-81136-09).
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered January 28, 2013.

_____
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE BYRON PENNINGTON II,
Appellant

No. 05-11-00929-CR        V.

THE STATE OF TEXAS, Appellee

Appeal from the 380th Judicial District
Court of Collin County, Texas (Trial Court
No. 380-81137-09).
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered January 28, 2013.

_____
MOLLY FRANCIS
JUSTICE



# Court of Appeals
# Fifth District of Texas at Dallas

## JUDGMENT

JOE BYRON PENNINGTON II,
Appellant

No. 05-11-00930-CR     V.

THE STATE OF TEXAS, Appellee

Appeal from the 380th Judicial District
Court of Collin County, Texas (Trial Court
No. 380-81138-09).
Opinion delivered by Justice Francis,
Justices Moseley and Lang participating.

Based on the Court's opinion of this date, we **AFFIRM** the trial court's judgment.

Judgment entered January 28, 2013.

_____
MOLLY FRANCIS
JUSTICE